**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | |
|---|---|
| **REBECCA LYNN STACY** | **CIVIL ACTION NO. 6:25-22-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **FRANK BISIGNANO,** | |
| **COMMISSIONER OF SSA,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

Plaintiff Rebecca Lynn Stacy brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Supplemental Security Income and Disability Insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

The decision under review was rendered by Administrative Law Judge ("ALJ") Todd Spangler on November 26, 2024 (Administrative Record "AR" 4819-40.) A prior decision by ALJ Joyce Francis dated May 31, 2023 was partially favorable, finding Stacy disabled beginning June 13, 2022. The unfavorable portion of ALJ Francis's decision found Stacy was not disabled from the alleged onset date of July 1, 2017 to June 12, 2022.  (AR 2000-18.) The Appeals Council vacated the unfavorable portion of that decision and remanded the claim to an ALJ for consideration of whether Stacy was disabled from July 1, 2017 to June 12, 2022. (AR 4887-88.) On remand, ALJ Spangler then issued the decision under review, finding that Stacy was not disabled from July 1, 2017 to June 12, 2022. The Court will refer to this period as the Relevant Period.

This Court's review of the decision by the ALJ is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The Court cannot reverse the ALJ "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762, 772 (6th Cir. 2001). If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if this Court would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

In denying Stacy's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Stacy did not engage in substantial gainful activity during the Relevant Period. (AR 4826.)

At step two, the ALJ determined that Stacy suffered from the following severe impairments during the Relevant Period: obesity in conjunction with degenerative disc disease; coronary artery disease (CAD) with stenting; chronic obstructive pulmonary disease (COPD); asthma; osteoarthritis; diabetes; status post right foot/ankle surgery; post-traumatic stress disorder (PTSD); anxiety; and depression. (AR 4826.)

At step three, the ALJ found that, during the Relevant Period, Stacy did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 4827.)

Before proceeding to step four, the ALJ determined Stacy's residual functional capacity (RFC) during the Relevant Period. As to Stacy's physical ability to work, the ALJ determined

that Stacy had the ability to perform "light work" as defined in 20 C.F.R. 416.1567(b) and 416.967(b) with certain exceptions. (AR 4830.) Stacy does not assert that the ALJ erred in this determination. Stacy's complaint is with the ALJ's conclusion regarding her mental ability to work. The ALJ concluded that Stacy could "understand, remember, and carry out simple instructions and tasks. She can tolerate occasional interaction with coworkers, supervisors, and the public. And she can adapt to occasional changes that are gradually introduced." (AR 4830.)

At step four, the ALJ determined that Stacy has no past relevant work. (AR 4838.)

At step five, the ALJ determined that, considering the RFC described above and Stacy's age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Stacy could have performed during the Relevant Period and, thus, she was not disabled during that period. (AR 4839-40.)

Stacy argues that the ALJ failed to adequately evaluate the supportability and consistency factors when assessing the opinion of Dr. Cristi Hundley. The "most important factors" when considering the persuasiveness of medical opinions and findings are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a). For "supportability," the issue is whether the medical source supports her opinion with objective medical evidence and explanations. 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). As to consistency, the issue is whether the medical opinion is consistent with other medical sources and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2). In assessing both, "an ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors, and a reviewing court is able to follow the ALJ's reasoning." *Tester-Kopec v. Comm'r of Soc. Sec.*, No. 1:25-CV-00001, 2025 WL 3628110, at *5 (N.D. Ohio Dec. 15, 2025) (internal quotations and citation omitted).

3

Dr. Hundley performed a psychological evaluation of Stacy on September 20, 2022. She determined that Stacy was moderately limited in her ability to understand and remember simple instructions and that Stacy was mildly to moderately limited in her ability to maintain attention and concentration. Those conclusions are not in dispute. The two conclusions at issue are Dr. Hundley's determination that Stacy is "markedly limited" in two areas: her ability to interact appropriately in a work setting and in her ability to handle the stresses typically associated with a work environment. (AR 2269.) The ALJ determined that the findings of "marked" limitations were not "consistent with or supported by either internal observations or the external treatment record." (AR 4837.) Stacy argues that, while the ALJ used the words "consistent" and "supported," he did not perform a sufficient analysis of either factor.

However, as to supportability, the ALJ noted that Dr. Hundley's conclusions were not supported by her own notes, which found that Stacy demonstrated "fidgetiness, irritability, and generally anxious or depressed mood." (AR 4837.) The ALJ determined these traits were "more accurately indicative of 'moderate' limitations." He noted that Dr. Hundley did not "find acute emotional instability or compromised cognition suggestive of 'marked' deficits." (AR 4837.) The ALJ noted that Dr. Hundley's report did not reflect any "significant problems aside from some irritability." (AR 4829, 4836.)  Otherwise, Dr. Hundley characterized Stacy as "pleasant and cooperative." (*Id.*) As noted by the ALJ, Dr. Hundley reported that Stacy was able to take care of personal hygiene on her own, do a wide array of household chores, and play games on her phone like Candy Crush and Solitaire in her leisure time. (*Id.*)

Stacy argues that the ALJ did not discuss significant mental deficits observed by Dr. Hundley, including that her IQ score of 72 indicates borderline intellectual functioning (AR 2268); that she was anxious, avoided eye contact, and processed and performed tasks at slow rate

(AR 2267); that she "had a persistent self-deprecating external dialogue" (AR 2267); and that she had "some difficulty with verbal comprehension." (AR 2267.)

Stacy does not, however, explain why any of these observations should have resulted in a finding that she has "marked" limitations in her ability to interact appropriately in a work setting or in her ability to handle the typical stresses of a job. Nor does she explain why these observations should have resulted in greater restrictions on her ability to work than the RFC allows. The ALJ concluded that Stacy could tolerate only occasional interaction with coworkers, supervisors, and the public; and that she could adapt to only "occasional changes that are gradually introduced." (AR 4830.) The ALJ determined that these restrictions were not necessarily inconsistent with Dr. Hundley's findings of "marked" limitations in Stacy's ability to interact appropriately in a work setting and in her ability to handle the stresses typically associated with a work environment.

"It is the plaintiff's burden to establish that greater functional limitations arising from their impairments are necessary." *Hall v. Comm'r of Soc. Sec.*, No. 6:24-CV-63-KKC, 2025 WL 1409494, at *4 (E.D. Ky. May 15, 2025); *see also Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019); *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008). Stacy does not explain why the observations by Dr. Hundley that the ALJ did not specifically discuss in the opinion require any greater restrictions on her mental ability to work than the ALJ found.

As to the consistency of Dr. Hundley's opinion with the rest of the record, the ALJ noted that the record reflected that Stacy had a "lack of acute problems controlling personal emotions and behaviors after achieving sustained sobriety in 2017." (AR 4829.) The ALJ also noted that Stacy led a "largely independent lifestyle suggestive of fair or adequate adaptive functioning."

5

(AR 4829, 4836.) The ALJ cited various state agency opinions, which uniformly found "moderate" limitations. The ALJ found these opinions "largely persuasive" because they were "consistent with and supported by the general lack of contributory clinical findings" after Stacy achieved sustained sobriety in 2017; Stacy's "relatively conservative outpatient treatment for emotional problems not induced by substance abuse"; and her "largely independent lifestyle." (AR 4835.)

Thus, in evaluating Dr. Hundley's opinion, the ALJ looked to Dr. Hundley's own notes, other opinions, and the medical record. The Court cannot find that the ALJ failed to adequately consider supportability or consistency in assessing Dr. Hundley's opinion.

Stacy argues that the ALJ also failed to adequately consider supportability and consistency is evaluating the State agency opinions. As discussed, however, the ALJ stated that he found these opinions were consistent with and supported by the lack of clinical findings to the contrary, the conservative outpatient treatment Stacy had received for emotional problems not related to substance abuse, and Stacy's ability to perform a wide range of tasks independently. Stacy argues that the ALJ failed to explain why he rejected the opinions restricting her to "supportive/non-confrontational contact"; a 60-day or less learning period; and "simple tasks requiring little independent judgment and involving minimal variations over two-hour work segments with normal breaks." (R. 14 Bf. at 13.)

The ALJ, however, explained that restricting Stacy to "supportive/non-confrontational contact" was "vague and unquantifiable." Thus, the ALJ found, it "means less than nothing" as a workplace restriction. (AR 4835.) Stacy does not provide any definition to this restriction or explain what it means for the RFC. The ALJ determined that any greater limitation in workplace

6

contact with coworkers, supervisors, and the public than what was provided in the RFC was unsupported by the record, which, as described above, he discussed in depth. (AR 4836.)

As to the qualification that Stacy be restricted to a 60-day or less learning period, the ALJ explained that the "number appears pulled from thin air." (AR 4836.) He noted that nothing in the record suggested that Stacy could not learn and perform tasks that require more than 60 days to learn. Stacy cites no such evidence. Further, the ALJ noted the "near-uniform consensus" among consultative examiners that Stacy can "comprehend simple instructions." Finally, the ALJ noted Stacy's own description of her "largely independent lifestyle."

Stacy argues that the ALJ did not consider the state agency consultants' findings that she should be limited to work with "minimal variations over two-hour work segments with normal breaks." However, the ALJ is not required to articulate how he considered every finding from a medical source. 20 CFR § 1520c(b)(1); 20 CFR §416.920c(b)(1). Stacy argues that, even if the regulations and case law do not require the ALJ to address this restriction, the Appeals Council did in its remand order. The remand order directed the ALJ to "give further consideration to the medical source opinion(s) and prior administrative medical findings" and to "give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitation." (AR 4889.) As discussed, the ALJ complied with those directives.

For all these reasons, the Court hereby ORDERS that Plaintiff Rebecca Stacy's request that the Court find her disabled during the Relevant Period or, alternatively, vacate the ALJ's decision and remand this matter to the agency for further proceedings (R. 14) is DENIED. The Court will enter judgment affirming the Commissioner's decision.

This 24th day of March, 2026.



**Signed By:**

***Karen K. Caldwell*** *KKC*

**United States District Judge**